IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| NICHOLAS ANTHONY HOWARD, ) | CASE NO.: 19-81973-CRJ7 |
| Debtor ) | |
| ) | |
| ALABAMA TEACHERS CREDIT UNION, ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| v. ) | ADVERSARY PROCEEDING NO.: |
| ) | |
| NICHOLAS ANTHONY HOWARD ) | _____ |
| Defendant. ) | |

## COMPLAINT

Pursuant to Bankruptcy Rule 7001, et seq., Plaintiff, Alabama Teachers Credit Union, by and thru undersigned counsel, hereby avers and states as follows:

1. This adversary proceeding is being brought in connection with the defendants' case under Chapter 7 of Title 11, Case Number **19-81973-CRJ7**, now pending before this Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 USC 157, 1334, and 11 USC 523, and under the order of reference entered by the United States District Court for the Northern District of Alabama, as well as under other applicable law.

2. The subject mater of this adversary proceeding is a "core proceeding," as that term is described in 28 USC, Section 157. If a determination is made in this action that the proceedings involve non-core matters, plaintiff consents to the entry of final orders or judgments by the Bankruptcy Judge.

3. That **NICHOLAS ANTHONY HOWARD** (hereinafter referred to as the "debtor"), the defendant herein, did file a petition for the relief under provisions of Chapter 7 of the United States Bankruptcy Code on or about June 28, 2019, before the U.S. Bankruptcy Code for the Northern District of Alabama, Eastern Division, Case No.: **19-81973-CRJ7**.

4. The parties all reside in this jurisdiction and/or otherwise are subject to the personal jurisdiction of this Court.

5. Plaintiff is a creditor of the debtor.

6. Plaintiff is the holder of a note and security agreement executed by debtor on or about May 30, 2014, which is secured by one 2004 Tracker Marine Tahoe boat (Serial BUJG35TEF4040), one 2004 Tahoe boat trailer (Serial #4TM35MG175B001058), and one 2004 Mercury 4ML boat motor (Serial #0W536783), hereinafter referred to as the "collateral." A copy of said note and security agreement and corresponding UCC Financing Statement is attached hereto as Exhibit "A".

7. Plaintiff obtained relief from stay with regard to the collateral pursuant to this Court's order dated September 6, 2019 [Doc. 22].

8. Debtor provided plaintiff with the name and address of the person who is reported to be in possession of the collateral, being one Juan Valencia, 6149 Highway 79 South, Guntersville, AL 35976.

9. Plaintiff attempted to repossess the collateral, but the collateral was not located at the address provided by debtor. Debtor has otherwise refused to either surrender the collateral to the plaintiff or provide the plaintiff with the location of said collateral. Further, debtor will not verify whether or not he sold the collateral to Juan Valencia or provide any information as to how Juan Valencia came into possession of the collateral.

10. The debtor failed to provide for this collateral in his statement of intentions and he has failed to either reaffirm this debt or surrender the collateral within the 45 day limit for him to do so.

11. It appears that the debtor has transferred the possession of as well as the title to the collateral to avoid including it in his bankruptcy. Further, the debtor has provided false information on his bankruptcy petition and schedules related to the subject debt owed to the plaintiff.

12. The purposeful, deliberate and illegal actions of the debtor serve to willfully and maliciously injure the plaintiff by depriving it of the value of the collateral that secures the debtors' debt, in violation of 11 USC, Section 523 (a)(6).

13. The purposeful, deliberate and illegal actions of the debtor serve to willfully and maliciously injure the plaintiff by depriving it of the value of the collateral that secures the debtors' debt, in violation of 11 USC, Section 727 (a)(2).

WHEREFORE, the Plaintiff prays that the Court will either determine that either the debtor is not entitled to a discharge of any debts pursuant to his actions as set out herein , and dismiss this bankruptcy case accordingly; or determine that the debt owed by the debtor to the plaintiff is non-dischargeable; that the Court will determine the remaining issues and render judgment for the plaintiff in the amount of its debt, plus pre-judgment and post-judgment interest and attorney's fees; and that it have such other and further relief as is just.

Dated this 3rd day of October, 2019.

Of Counsel:
TURNBACH, WARREN, RICE, LLOYD,
FREDERICK & SMITH, P.C.
P. O. Box 129
Gadsden, AL 35902
(256) 543-3664
drice@twlegal.us

/s/Dana L. Rice
Dana L. Rice (RIC038)
Attorney for Alabama Teachers
Credit Union

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing on all counsel of record for all parties by using the CM/ECF system, which will send such notification to the following:

Mark O. South, Esq., markosouth@aol.com;

and via U.S. Mail, postage prepaid, to:

Judith Thompson, Trustee
P. O. Box 18966
Huntsville, AL 35804

Nicholas Anthony Howard, Debtor
5850 County Road 813
Cullman, AL 35055

on this 3rd day of October, 2019.

                                                  /s/Dana L. Rice
                                                  Of Counsel

**ALABAMA TEACHERS CREDIT UNION**
P.O. Box 1400
Gadsden, AL 35902-1400
(256) 543-7040

**LOANLINER**

Menkupd $20
UCCI fu0530-14
ymc

## LOAN AND SECURITY AGREEMENTS AND DISCLOSURE STATEMENT

| LOAN DATE | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER | MATURITY DATE |
|---|---|---|---|---|
| 05/30/2014 | | | 001-0269-4 | 06/14/2018 |

**BORROWER 1**
NAME AND ADDRESS
NICHOLAS HOWARD
719 CEDAR STREET
ALBERTVILLE, AL 35950

**BORROWER 2**
NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)

### TRUTH IN LENDING DISCLOSURE "e" means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $ which includes your downpayment of $ |
| 5.5000 % | $1,556.62 | $11,000.00 | $12,556.62 | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 47 | $261.60 | Monthly Beginning 07/14/2014 |
| 1 | $261.42 | 06/14/2018 |

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the credit union. If you get the insurance from us, you will pays

**Late Charge:** 5% of scheduled payment if more than 15 days late. Minimum $10.00, Maximum $100.00.

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Assumption:** Someone buying your mobile home ☐ cannot assume the remainder of the loan on the original terms.

**Demand:** ☐ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Filing Fees** NH **Non-Filing Insurance**
$0.00 20.00 poc $

**Security:** Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| TRACKER | MARINE TAHOE | 2004 | BUJG35TBF404 | | $11,440.00 | |
| TAHOE | TRAILER | 2004 | 4TM36MG175B001058 | | $1,175.00 | |
| MERCURY | 4ML | 2004 | OW536783 | | $520.00 | |

Other (Describe)
Pledge of Shares $ _____ In Account No. _____ $ _____ In Account No. _____

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.** By signing as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.

X _[signature]_ (SEAL) 5/30/14
BORROWER 1                DATE

X _[signature]_ (SEAL) 05/30/14
OTHER BORROWER / OWNER OF PROPERTY / WITNESS   DATE

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02 ALL RIGHTS RESERVED

NXX024 (LASER)

Credit Union Alabama Teachers Credit Union  
Borrower(s) NICHOLAS HOWARD  
Loan No. 5   Acct. No. ▓▓▓▓

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of | Amount Given to You Directly | Amount Paid on Your Account | Prepaid Finance Charge |
|---|---|---|---|
| $11,000.00 | $11,000.00 | $0.00 | $ |

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| $ | To | $ | To |
|---|---|---|---|
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs this Agreement as a borrower.

**1. PROMISE TO PAY -**

You promise to pay $ 11,000.00 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 6.5000 % per year.

**Collection Costs:**

In the event of default, you agree to pay all costs of collecting the amount you owe under this agreement including reasonable attorney fees not in excess of fifteen percent (15%) of the unpaid debt if the amount financed hereunder exceeds Three Hundred Dollars ($300.00) and the debt is referred for collection to an attorney who is not our employee.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect credit insurance, we will either include the premium in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. *If Credit Union has a federal charter:* Statutory Lien - If you are in default on a financial obligation to us, federal law gives us the right to apply the balance of shares and dividends in all individual and joint accounts you have with us to satisfy that obligation. After you are in default, we may exercise this right without further notice to you. (We have a federal charter if our name includes the term "Federal Credit Union.") *If Credit Union has a state charter, except in Ohio and Rhode Island:* We have a statutory lien on the shares and dividends and, if any, the deposits and interest in all individual and joint accounts you have with us and may exercise our rights under the lien to the extent permitted by state law. (We have a state charter if our name does not include the term "Federal Credit Union.") *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the credit union now and in the future. The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default. The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT** - When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

**7. EACH PERSON RESPONSIBLE** - Each person who signs this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE** - If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. OTHER PROVISIONS** -

NH

© CUNA MUTUAL GROUP, 1999, 2000, 2001 - ALL RIGHTS RESERVED

KXX024 (LASER)

Credit Union Alabama Teachers Credit Union  
Borrower(s) NICHOLAS HOWARD

Loan No. 5     Acct. No. [redacted]

## SECURITY AGREEMENT

In this Agreement all references to "credit union," "we," "our," or "us" mean the credit union whose name appears on this document and anyone to whom the credit union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you," or "your" mean any person who signs this Agreement.

1. **THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

2. **WHAT THE SECURITY INTEREST COVERS** - The Property secures the Loan and any extensions, renewals or refinancings of the Loan. If the Property is not a dwelling, it also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal residence, the Property will secure only this Loan and not other loans or amounts you owe us.

3. **OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

4. **PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

5. **USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair, (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept, (3) Inform us, in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose.

6. **PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

7. **INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

8. **DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default.

9. **WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available to you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Loan.

If you have agreed to pay the Loan, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

10. **DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

11. **CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

12. **NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS NOT REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

13. **NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

14. **NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

15. **OTHER PROVISIONS** -

*NH*

© CUNA MUTUAL GROUP, 1990, 2000, 2001, ALL RIGHTS RESERVED

NXK024 (LASER)

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Kimberly Ingram

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

ALABAMA TEACHERS CREDIT UNION
P O Box 1400
GADSDEN, AL 35904

Alabama
Sec. Of State
B 19-0371378 FS
Date 7/15/2019
Time 12:21
1 Pg
File $20.00
ExPg $.00
Ackn $.00
Form
Total $20.00
02/046

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR 1b. INDIVIDUAL'S LAST NAME: HOWARD | FIRST NAME: NICHOLAS | MIDDLE NAME: | SUFFIX:

1c. MAILING ADDRESS: 212 GREENWOOD AVE | CITY: BOAZ | STATE: AL | POSTAL CODE: 35957 | COUNTRY:

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b)

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: ALABAMA TEACHERS CREDIT UNION

3c. MAILING ADDRESS: PO BOX 1400 | CITY: GADSDEN | STATE: AL | POSTAL CODE: 35902 | COUNTRY:

**4. This FINANCING STATEMENT covers the following collateral:**

2004 TRACKER MARINE TAHOE SERIAL #BUJG35TEF404
2004 TAHOE TRAILER 19 FT SINGLE AXEL VIN 4TM36MG175B001058
2004 MERCURY 4ML MOTOR SERIAL # OW536783

**8. OPTIONAL FILER REFERENCE DATA**
73660-5

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)